**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**KATHY V. BEDDOW,**

      **Plaintiff,**

      **v.**

**JAY RHODES AND J. STREEVAL,**

      **Defendants.**

**Case No. 2:18-CV-2442-JAR-TJJ**

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff Kathy Beddow brings suit against Defendants Jay Rhodes and Jason Streeval in their individual capacities alleging that they violated her Fifth Amendment right to equal protection.[1]  Plaintiff is disabled, and she visited her son at the United States Penitentiary ("USP") Leavenworth in 2016.  The electronic chairlift was inoperable on several occasions, and visitors were sometimes permitted to access the facility through the rear gate or participate in video conference visitation.  Plaintiff claims that instead of allowing Plaintiff rear gate access to the facility, she either had to climb the 43 stairs to the front door or leave the facility without seeing her son.

Before the Court is Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 66).  They assert that (1) Plaintiff cannot state a *Bivens* claim, (2) they are entitled to qualified immunity, (3) Plaintiff's request for injunctive relief is moot, and (4) to the extent Plaintiff alleges a claim under the Federal Tort Claims Act ("FTCA"), she fails to state a plausible claim for relief.  The motion is fully briefed and the Court is prepared to rule.  For the

---

[1]Plaintiff also asserted an Eighth Amendment claim, but in her responsive brief, she concedes that her claim is not cognizable and she will no longer pursue it.

reasons set forth in detail below, the Court grants Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.

## I.    Legal Standard

Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. Both Defendants and Plaintiff include attachments to their briefing.  Defendants include declarations from both Rhodes and Streeval.  Plaintiff attaches several exhibits to her response, including declarations from Plaintiff, Plaintiff's son, and another disabled individual who visited USP Leavenworth in late 2016.  The Court considered several of these documents in deciding this motion, and thus the Court construes Defendants' motion as one for summary judgment.[2]

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[3]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[4]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[5]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[6]  An issue

---

[2]*See* Fed. R. Civ. P. 12(d).  Because Plaintiff is pro se, Defendant also provided Plaintiff with the required "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment."  The Court notes that Plaintiff objects to Rhodes' declaration, and two attached exhibits, by asserting that they were not properly authenticated.  Rhodes signed his declaration under penalty of perjury and thus the Court finds it properly authenticated.  *See* Fed. R. Evid. 901.

[3]Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[4]*City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[5]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[6]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[7]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[8]  Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript[,] or a specific exhibit incorporated therein."[12]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[13]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[14]  In responding to a motion for summary judgment, "a party cannot rest on

---

[7]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[8]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

[9]*Anderson*, 477 U.S. at 256.

[10]*Id.*; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[12]*Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000).

[13]*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[14]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

## II.    Facts

The following facts are uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiff as the nonmoving party.[16]   Plaintiff brings suit against Jay Rhodes and J. Steeval.  Plaintiff's son was incarcerated at USP Leavenworth in 2016.  It is a medium-security facility that houses male inmates.  Rhodes was the Captain in charge of daily operations at USP Leavenworth in 2016.  Specifically, Rhodes served as Captain from December 2014 through February 2017.  Steeval was the Associate Warden at USP Leavenworth from November 15, 2015, until April 15, 2018.

Plaintiff suffers from Chronic Obstructive Pulmonary Disorder ("COPD") and several other medical conditions.  She requires an auxiliary aid to assist her in breathing.  These conditions qualify her to be designated as handicapped/disabled.  The Missouri Department of Motor Vehicles has designated Plaintiff as handicapped for the past several years.

USP Leavenworth offers a general population inmate visitation program.  This program allows face-to-face contact visitation on Fridays through Mondays.  Visitors are allowed to take pictures, hold hands during the visit, play certain board games and card games, and embrace and kiss at the beginning and end of the visit.

The visitation room in USP Leavenworth is located inside the front entryway of the facility.  To obtain access, an individual must walk up 43 stairs.  USP Leavenworth also has an electronic chairlift, assisting disabled individuals up the 43 stairs, but it was inoperable during

---

[15]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[16]The facts are taken from Plaintiff's Amended Complaint or from the uncontroverted facts set forth in the parties' briefing and declarations.

most of 2016.  The electronic chairlift has a history of being inoperable and was written about in a published book.

Due to the chairlift's inoperability, at times, the captain at USP Leavenworth allowed rear gate access for inmate visitation.  The rear gate is on the ground level and does not require climbing stairs.  When visitors were allowed rear gate access, staff would escort the visitors through the rear gate from the back of the institution, through the main corridor, to the visiting room located near the front of the facility.  During this time, the institution would be placed on lock down status requiring all units to be locked and inmate movement restricted to ensure the safety of visitors, staff, and inmates.  This process interrupted the regular operations of the facility and required staff to be diverted from their regular duties to escort visitors.

While escorted through the premises, visitors could see the internal layout of the institution, staffing levels, and staff locations.  Inmates could take advantage of the situation. Due to these concerns, different wardens took different stances regarding rear gate access to visitors.  Staff were instructed to inform their chain of command when the chairlift was inoperable so the Warden could be apprised of the situation and make a determination regarding rear gate access.

Plaintiff was an approved visitor on her son's visiting list which allowed her to visit him during visiting hours.  Plaintiff called to check on the status of the chairlift prior to visiting her son each time.  Every time Plaintiff called, she was told it was operational.  She alleges that it was inoperable on six different occasions when she arrived.  On each occasion Plaintiff requested accommodation, such as rear gate access, she was denied.  Plaintiff proceeded inside the facility three different times without the use of the chairlift.  On these occasions, she experienced pain and suffering.

Plaintiff and Plaintiff's son repeatedly communicated with the Disability Rights Center and the ACLU about the chairlift's inoperability and that reasonable accommodations were not being made for Plaintiff.   Plaintiff's son submitted seven informal administrative grievances while in USP Leavenworth alleging that Plaintiff was being discriminated against because she was not allowed rear gate access.  Plaintiff states that Rhodes agreed to allow Plaintiff rear gate access on November 24, 2016 if Plaintiff's son agreed to informally resolve and drop the seven grievances.

On November 21, 2016, Rhodes issued a memorandum changing the existing general population inmate visitation procedures for disabled visitors utilizing the electronic chairlift to gain access to USP Leavenworth.  The memo allowed disabled visitors to have a no contact video visit, not to exceed two hours when the chairlift was inoperable.  On this date, Rhodes told Plaintiff's son that the new video visitation policy applied to him and Plaintiff, and Plaintiff would not be allowed rear gate access on November 24.

Plaintiff visited her son on November 24, 2016, and the electronic chairlift was inoperable.  She inquired about the video visitation program, and the BOP staff member stated that she did not know about the program.  Plaintiff was told that she could either climb the stairs or go home because she could not obtain rear gate access.  Plaintiff climbed the stairs because she wanted to see her son on his birthday.  She states that she was in fear of passing out while climbing the stairs and was in pain for several days after the visit.

On or around November 28, 2016, Plaintiff spoke with a local news outlet, Fox 4 News Problem Solvers Department, about the ongoing issues of the inoperable chairlift.  Plaintiff, Plaintiff's son, and several other individuals spoke to the news reporter.  The segment was aired on December 1, 2016.

On December 2, 2016, the Warden issued an email approving BOP custody staff to work overtime on Saturdays and Sundays to allow rear gate access to the facility. The email also directed staff that they must inform Captain Rhodes prior to any visitor entering the rear gate, and once approved, the visitor would be escorted to and from the rear gate.

From September through November 2016, Plaintiff alleges that two other disabled individuals, Mr. Thornbrugh and Mr. Knunzler, were granted accommodation through rear gate access when they visited USP Leavenworth, but she was flatly denied access. She claims that they were allowed rear gate access on four separate occasions from September to November 2016. Plaintiff states that she and her son were told that she would not be allowed to enter the rear gate at the same time as Thornbrugh because she lived within the Kansas City area, but Thornbrugh did not.

Plaintiff provides a declaration from Knunzler with her response brief. In this declaration, Knunzler states that he is disabled and relies on an electronic motorized wheelchair 50 percent of the time. Knunzler's son was incarcerated in USP Leavenworth from October 1, 2016 through April 2017. Knunzler stated that he was granted rear access on two different occasions in November 2016.

On April 21, 2017, a new chairlift was installed at the entrance of USP Leavenworth. There were no further operational problems with the chairlift from the time it was installed until the time Streeval left the facility in 2018. Plaintiff's son is currently incarcerated in a correctional facility in Ohio.[17]

---

[17]The facts do not demonstrate when he was moved. There are no allegations or facts demonstrating electronic chairlift or accessibility issues past 2016.

Rhodes no longer works at USP Leavenworth.  He left USP Leavenworth in February 2017 when he went to USP Pennsylvania, where he worked until October 2018.  Rhodes currently works as a Correctional Services Administrator for the Bureau of Prisons ("BOP") in Maryland.  Streeval no longer works at USP Leavenworth and is currently employed as the Warden at Federal Correctional Institution ("FCI") in Ashland, Kentucky.  He has worked at FCI Kentucky since April 2018 when he left USP Leavenworth.

In Plaintiff's Amended Complaint, she asserts that the Court has jurisdiction to hear her case based on 28 U.S.C. § 1331, *Bivens v. Six Unknown Narcotics Agents of the Federal Bureau of Narcotics*,[18] the Rehabilitation Act of 1973, and the Federal Tort Claims Act ("FTCA").  Plaintiff claims that her Fifth Amendment right to equal protection was violated.  She seeks $50,000 in compensatory damages and $200,000 in punitive damages.  She also seeks injunctive relief from the Warden and requests that the November 21, 2016 memorandum, in which video visitation was allowed for disabled visitors when the electronic chairlift was inoperable, be officially rescinded.

## III.   Discussion

Defendants assert that Plaintiff cannot establish a constitutional violation for which she can obtain damages under *Bivens*.  Defendants further argue that they are entitled to qualified immunity because Plaintiff cannot demonstrate a constitutional violation of her rights or that a constitutional right was clearly established.  In addition, Defendants contend that Plaintiff's claim for injunctive relief is moot.  Finally, Defendants argue that to the extent Plaintiff asserts a claim under the FTCA, her claim fails.  The Court will address each argument in turn.

### A.   *Bivens* Claim

---

[18]Doc. 37 at 2 (citing *Bivens*, 403 U.S. 388 (1971)).

A *Bivens* action is one in which an individual is allowed to assert a claim against government officials for constitutional violations.[19]  There are very few constitutional violations for which a *Bivens* claim is recognized.[20]  Indeed, the United States Supreme Court has only recognized three implied cause of actions over the past 50 years including one for an improper search under the Fourth Amendment, one for gender discrimination under the Fifth Amendment, and one for cruel and unusual punishment under the Eighth Amendment.[21]  In *Ziglar v. Abassi*, the United States Supreme Court noted that the extension of *Bivens* liability is now a "disfavored" judicial activity and further restricted the availability of *Bivens* actions.[22]

Very recently, the United States Supreme Court affirmed this principle in *Hernandez v. Mesa* in which it again declined to recognize a *Bivens* action for alleged Fourth and Fifth Amendment violations.[23]  The court noted that there is a two-step inquiry when determining whether to extend *Bivens* liability to a claim.[24]  The first question is whether the claim "arises in a 'new context' or involves a 'new category of defendants.'"[25]  "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."[26]  If the claim arises in a new context, the second step considers "whether there are any special factors that counsel hesitation" in expanding the

---

[19]*Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

[20]*Id.*; *see also Ziglar v. Abassi*, 137 S. Ct. 1843, 1854–55 (2017) (noting the limited instances in which a *Bivens* claim has been allowed).

[21]*See Bivens*, 403 U.S. at 397 (allowing a claim for an improper search under the Fourth Amendment); *Davis v. Passman*, 442 U.S. 228, 248–49 (1979) (finding that a claim for gender discrimination in violation of the Fifth Amendment was allowed); *Carlson v. Green*, 446 U.S. 14, 19 (1980) (allowing an Eighth Amendment claim for cruel and unusual punishment against prison officials).

[22]*Abassi*, 137 S. Ct. at 1857 (citation omitted).

[23]140 S. Ct. 735 (2020).

[24]*Id.* at 743.

[25]*Id.* (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

[26]*Id.*

remedy.[27]  Several considerations are relevant, but the most important one is "separation-of-powers principles" and the risk of interfering with the authority of other government branches.[28] If there are special factors that counsel hesitation, the court should decline to expand *Bivens* to the new context.[29]

### 1.    New Context

In this case, as to step one, Plaintiff attempts to extend *Bivens* liability to her Fifth Amendment claim based on prison access to disabled visitors.  She claims that Defendants violated her Fifth Amendment right to equal protection on a "class of one" theory.[30] Specifically, she contends that Defendants discriminated against her when prison officials did not allow her, but allowed other disabled individuals, rear gate access to the prison.  This claim undoubtedly arises in a new context and involves a new category of defendants from the previous recognition of a Fifth Amendment *Bivens* claim based on gender discrimination in the employee-employer context.  Thus, the Court must consider whether special factors counsel against extending *Bivens* liability in this case.

### 2.    Special Factors

Several factors that may be relevant in determining whether to extend *Bivens* liability include an "assessment of its impact on governmental operations systemwide,"[31] "the burdens on Government employees who are sued personally, as well as the projected costs and consequences

---

[27]*Id*. (quotation marks and citation omitted).

[28]*Id.* (citing *Abassi,*137 S. Ct. at 1857).

[29]*Id.*

[30]As noted above, Plaintiff originally asserted an Eighth Amendment claim in her Complaint as well.  She has since abandoned that claim and thus the Court will not address it.

[31]*Abassi*, 137 S. Ct. at 1858.

to the Government itself,"[32] whether "there is an alternative remedial structure present in a certain case,"[33] and one of the most important factors—the consideration of the separation-of-powers principle in the case.[34]

Here, there are multiple factors weighing against the extension of a *Bivens* remedy. Initially, there is an alternative remedial structure in place to address Plaintiff's interest. "[I]f Congress has created any alternative, existing process for protecting the injured party's interest that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."[35] Here, Plaintiff alleges that she was denied equal protection and discriminated against on the basis of her disability by the denial of rear gate access to USP Leavenworth on certain occasions when the electronic chairlift was inoperable.

Defendants assert that Title 28, Part 39, of the Code of Federal Regulations addresses the enforcement of non-discrimination on the basis of handicap in programs conducted by the Department of Justice.[36] These regulations include a complaint process and procedures as to how to seek compliance of "allegations of discrimination on the basis of handicap."[37]

> Any person who believes that he or she has been subjected to discrimination prohibited by this part may by him or herself or by his or her authorized representative file a complaint with the Official. Any person who believes that any specific class of persons has been subjected to discrimination prohibited by this part and who is a member of that class or the authorized representative of a member of that class may file a complaint with the Official.[38]

---

[32] *Id.*

[33] *Id.*

[34] *Hernandez*, 140 S. Ct. at 743 (citing *Abassi,*137 S. Ct. at 1857).

[35] *Abassi*, 137 S. Ct. at 1858 (quotation marks and citations omitted).

[36] *See* 28 C.F.R. § 39.101 (stating that "[t]his part effectuates section 119 of the Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, which amended section 504 of the Rehabilitation Act of 1973 to prohibit discrimination on the basis of handicap in programs or activities conducted by Executive Agencies or the U.S. Postal Service.").

[37] 28 C.F.R. § 39.170(a).

[38] *Id.* § 39.170(d)(1)(i).

The Code of Federal Regulations sets forth an extensive process on how claims should be submitted and how they will be evaluated and decided.[39]

Furthermore, Congress enacted the Architectural Barriers Act ("ABA"), "to insure whenever possible that physically handicapped persons will have ready access to, and use of, [federal] buildings."[40]  When an individual follows the complaint process set forth in the Code of Federal Regulations, 29 C.F.R. § 39.170(e) requires notification be sent to the Architectural and Transportation Barriers Compliance Board, specifically "a copy of any complaint alleging that a building or facility that is subject to the [ABA] . . . is not readily accessible to and usable by handicapped persons."  "Pursuant to 29 U.S.C. § 792(e)(1), the Board 'shall conduct investigations, hold public hearings, and issue such orders as it deems necessary to ensure compliance with the' ABA, and 'any complainant or participating in a proceeding [before the Board] may obtain [judicial] review of a final order issued in such proceeding."[41]  In addition, 29 U.S.C. § 792(e)(2)(A) authorizes the executive director "to bring a civil action in any appropriate United States district court to enforce, in whole or in part, any final order of the Access Board."  Here, there is an extensive alternative remedial structure in place for Plaintiff to address discrimination on the basis of her disability and accessibility to USP Leavenworth, a federal building.[42]

---

[39]*Id.* § 39.170(d)(3) (stating that the claim must be filed within 180 days of the alleged act of discrimination); § 39-170(d)(4) (noting the specific location for claims to be filed); § 39-170(f) (describing acceptance of the complaint); § 39-170(g) (describing the investigative and conciliatory process); § 39.170(h) (describing the process if an informal resolution is not met); § 39.170(i) (explaining the appeal process); § 39.170(k) (explaining the hearing process); § 39.170(l) (describing the decision process).

[40]42 U.S.C. § 4152.

[41]*Cooke v. U.S. Bureau of Prisons*, 926 F. Supp. 2d 720, 727 (E.D.N.C. 2013) (citing 29 U.S.C. § 792(e)(1)).

[42]The Court notes that Plaintiff alleged in her Amended Complaint that her son submitted numerous administrative grievances while in USP Leavenworth alleging that Plaintiff was being discriminated against. Plaintiff, however, does not allege that she filed any complaint pursuant to the procedures set forth in 28 C.F.R. §

Another factor counseling against recognizing a *Bivens* remedy in this context, is the substantial interference with the administration of prisons and with separation-of-power principles.  As detailed above, Congress has already implemented a vast regulatory scheme addressing discrimination on the basis of disability and access to federal buildings.  Due to these extensive regulations, the judiciary should be reluctant to intrude upon that authority by creating additional remedies.

In addition, the federal building in this case is a prison which involves additional security concerns, as well as additional separation-of-powers implications.  Plaintiff emphasizes that this case is not about prison access per se but instead that disabled individuals were allowed rear gate access to the prison while she was not.[43]   Context, however, is important.  Plaintiff is visiting or accessing a prison which is not generally open to the public and thus, prison considerations are relevant.

The United States Supreme Court has noted that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."[44]   Congress has directed that the BOP, under the direction of the Attorney General, is in "charge of the management and regulation of all Federal penal and correctional institutions."[45]

---

39.170(d).  In addition, the fact that Plaintiff did not avail herself of these procedures, or even that the procedures did not bring about the desired result, does not mean that an alternative remedial structure was not in place for Plaintiff to utilize.

[43]The Court already set forth above several regulatory procedures available to Plaintiff to redress her claim.

[44]*Whitley v. Albers*, 475 U.S. 312, 321–22 (1986) (quotation marks and citation omitted); *see also Wolff v. McDonnell*, 418 U.S. 539, 566–67 (1974) (stating that prison officials "must have the necessary discretion without being subject to unduly crippling constitutional impediments").

[45]18 U.S.C. § 4042(a)(1).

The BOP is also responsible for ensuring the safekeeping and protection of individuals in the prison.[46]

The Court also notes that the Code of Federal Regulations provide that it is the Warden's responsibility to establish and enforce "local visiting guidelines in accordance with the rules and regulations of the Bureau of Prisons."[47]  These regulations make clear that the Warden has the responsibility to ensure the safety and security of the institution and must set forth certain guidelines.[48]  In addition, the Tenth Circuit has stated that there is no "right to unfettered visitation" to a prison, and "prison officials necessarily enjoy broad discretion in controlling visitor access to a prisoner."[49]

Defendants provide declarations in which both Rhodes and Streeval aver that rear gate access required placing the prison on lock-down and restricting inmate movement through the institution to ensure the safety of visitors, staff, and inmates.  The process interrupted the regular operations of the facility and required staff to be diverted from their regular duties to escort visitors.  The facts also indicate that allowing rear gate access on Saturdays and Sundays required the Warden to approve overtime pay so the appropriate number of employees were present at USP Leavenworth to ensure appropriate facility operation.

Each prison is a unique environment requiring prison officials and administrators to implement procedures and processes to ensure the safekeeping and protection of individuals.  In addition, each prison must adequately address its fiscal needs and concerns.  To recognize a cause of action for a Fifth Amendment constitutional violation against a prison official who is

---

[46]*Id.* § 4042(a)(2)–(3).

[47]*See* 28 C.F.R. Part 540.

[48]28 C.F.R. § 540.51.

[49]*Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (finding that a prisoner did not have a viable claim under 42 U.S.C. § 1983 for denial to family visitation).

required to make decisions on the basis of facility, monetary, and work force constraints would substantially interfere with the scheme already set forth by statute that the BOP is in charge of the management of those facilities.

In sum, Plaintiff seeks to expand *Bivens* in a new context and where special factors counsel against expansion. Allowing a *Bivens* suit in this context, which is a disfavored remedy, would intrude in an offensive manner on the administration of prison officials. Accordingly, the Court concludes that Plaintiff cannot state a *Bivens* claim on the basis of these facts.

### B.    Qualified Immunity

Defendants also assert that they are entitled to qualified immunity. "Public officials enjoy 'qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties.'"[50] "To overcome qualified immunity, a plaintiff must show that: (1) the public official violated the plaintiff's constitutional rights; and (2) these rights were clearly established at the time of the alleged violation."[51] The *Bivens* question, however, is "'antecedent' to the other questions presented."[52] If a *Bivens* remedy is unavailable, qualified immunity is not relevant.[53] Here, the Court already determined that there is no *Bivens* claim. Accordingly, the Court need not address Defendants' qualified immunity argument.

### C.    Injunctive Relief

---

[50] *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 864 (10th Cir. 2016) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013)).

[51] *Id.* (citation omitted).

[52] *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (citing *Wood v. Moss*, 572 U.S. 744, 757 (2014)).

[53] *See Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007) (noting that whether a cause of action is available is "directly implicated by the defense of qualified immunity") (quoting *Hartman v. Moore*, 547 U.S. 250, 257 n.5 (2006)); *Williams v. United States*, 780 F. App'x 657, 664 n.7 (10th Cir. 2019) (noting that "[w]e need not address the government's qualified immunity argument because of how we dispose of the *Bivens* claim" (citing *Hill v. Dep't of Air Force*, 884 F.2d 1318, 1320 (10th Cir. 1989)).

Plaintiff requests injunctive relief under the Rehabilitation Act and seeks the rescission of

Rhodes' November 21, 2016 memorandum which allowed disabled visitors who relied upon the

electronic chairlift to visit via video conference if the chair lift was inoperable.[54]  Defendants

assert that Plaintiff's request is moot.

"Generally, a case becomes moot when the issues presented are no longer live or the

parties lack a legally cognizable interest in the outcome."[55]  In addition, injunctive relief under

the Rehabilitation Act will become moot if the circumstances change and no longer present a

question.[56]  The Court lacks subject matter jurisdiction over claims that are moot.[57]

Plaintiff's request is moot for several reasons.  First, the chairlift at USP Leavenworth

was replaced in April 2017 and therefore it is now functional.  Thus, there is no need for the

video-conferencing alternative provided for in the November 21 memo.[58]  In addition, Plaintiff's

son is no longer at USP Leavenworth but is instead housed in a correctional facility in Ohio.

Thus, Plaintiff no longer visits the Leavenworth facility.  Accordingly, the Court finds Plaintiff's

---

[54]It appears that Plaintiff alleges the November 21 memo allowing video visitation was improper because it did not allow in-person contact.  She also alleges, however, that she was not allowed to participate in video visitation on November 24 and instead had to walk up the 43 steps to visit her son.  Thus, it is unclear what injury she alleges from the November 21 memo.

[55]*Oyler v. Allenbrand*, 23 F.3d 292, 294 (10th Cir. 1994) (quotation marks and citation omitted).

[56]*See White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996) (finding prisoner's injunctive claim moot due to his subsequent release on parole); *see also LaFaut v. Smith*, 834 F.2d 389, 394–95 (4th Cir. 1987) (finding that the plaintiff's request for injunctive relief under the Rehabilitation Act was moot because he had been transferred from one prison to another and subsequently released from prison prior to the court considering his claim).

[57]*Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).

[58]The Court notes several additional issues regarding the rescission of the November 21, 2016 memo.  It appears that the memorandum was no longer effective as of December 2, 2016 when the Warden approved overtime for staff to allow rear gate access to the facility.  In addition, Rhodes and Steeval are the named Defendants in this case, and both Rhodes and Steeval no longer work at USP Leavenworth so they have no authority to rescind the memorandum.  Finally, it is doubtful that the Court could order the rescission of an internal memorandum addressing prisoner visitation.  *See* 28 C.F.R. § 540.40 (stating that the Warden "may restrict inmate visiting when necessary to ensure the security and good order of the institution").

request for injunctive relief under the Rehabilitation Act moot, and the Court lacks jurisdiction over this claim.[59]

### D.  FTCA Claim

Plaintiff states in her Amended Complaint that the Court has jurisdiction pursuant to the FTCA.  She also states that she exhausted her administrative remedies related to her FTCA claims.  In addition, she asserts in her response to Defendants' motion that she "exhausted her administrative claim against the United States in order to bring her injunctive relief claim under the Rehabilitation Act of 1973 (RA)."[60]  Defendants contend that to the extent Plaintiff brings a FTCA claim and requests monetary relief, her claim fails.

The United States is the only proper party in a suit brought under the FTCA.[61]  Individual defendants and agencies are not proper defendants.[62]  Here, Plaintiff does not name the United States as a party.  Instead, she names Defendants Rhodes and Streeval.  She also specifically states that she names them in their individual capacities.[63]  Thus, she fails to assert a claim under the FTCA.

The Court recognizes that Plaintiff is pro se and to the extent she intends to assert a claim against the United States, the Court will briefly address it.  "The FTCA constitutes a limited waiver of the federal government's sovereign immunity from private suit."[64]  It requires a

---

[59]It is unclear whether Plaintiff also seeks injunctive relief under *Bivens* or the FTCA.  The Court finds it unnecessary to make this determination.  As noted above, there is no live controversy and Plaintiff lacks a cognizable interest in the outcome.

[60]Doc. 81 at 13.  It is unclear whether Plaintiff is asserting "exhaustion" of administrative remedies for a claim under the Rehabilitation Act or the FTCA.  As noted above, Plaintiff's claim for injunctive relief under the Rehabilitation Act is moot.

[61]*See* 28 U.S.C. § 2679(b)(2); *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009).

[62]*Smith*, 561 F.3d at 1099.

[63]It does not appear as though Plaintiff named the BOP as a party either.  Even if she named the BOP, the United States is the only appropriate defendant in an FTCA claim.

[64]*Estate of Trentadue v. United States*, 397 F.3d 840, 852 (10th Cir. 2005) (citing 28 U.S.C. § 1346(b)).

"negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[65]  The substantive law of the state where the alleged act or omission took place is applicable in an FTCA action.[66]  Here, Kansas law would apply as USP Leavenworth is located in Kansas.  Plaintiff, however, fails to allege any violation of Kansas tort law.  Instead, she only asserts federal and constitutional claims.  Accordingly, to the extent Plaintiff states a claim under the FTCA, her claim fails and is dismissed.

In sum, Plaintiff fails to state a *Bivens* claim.  The Court finds it unnecessary to address Defendants' qualified immunity argument as Plaintiff fails to state a claim.  In addition, Plaintiff's claim for injunctive relief under the Rehabilitation Act is moot, and the Court lacks jurisdiction over this claim.  Finally, to the extent Plaintiff asserts an FTCA claim, she fails to do so.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 66) is **granted**.

**IT IS SO ORDERED.**

Dated: April 15, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[65]28 U.S.C. § 1346(b)(1).

[66]*Harter v. United States*, 344 F. Supp. 3d 1269, 1279 (D. Kan. 2018) (citations omitted).